KNOLL, J.,
additionally concurs in the denial of rehearing. ■
U concur fully in the majority’s decision to deny rehearing in this'matter. I write separately to express my well-considered view that respondent’s • false allegations and inflammatory language concerning then-Fifteenth Judicial District Court Judgé Keaty and Third Circuit Court of Appeal Judges Thibodeaux, Peters, and Painter were so far beyond the pale-that the question of whether respondent committed sanctionable misconduct was' not even a close one for a majority of this Court; " ' ■
Applying the objective standard’ this Court adopted in Louisiana State Bar Association v. Karst,[1] the majority considered the evidence respondent, Ms. Mire, put on the record during her disciplinary proceeding and concluded that nothing Ms. Mire submitted rose beyond the level of offensive innuendo. Ms. Mire relies heavily on the testimony of Joel Wax, co-owner of the company who sells the digital.recording system used both in the Fifteenth Judicial District Court and in. this Court but who, otherwise, has no personal knowledge concerning the facts and the circumstances surrounding the creation of the audio recording with which Ms. Mire boldly accused Judge Keaty of tampering. While Ms. Mire highlights Mr. Wax’s testimony that the audio recording did not come from one of his company’s recording devices, Mr. Wax could not offer an opinion as to whether or not the recording reflected the. proceedings .that actually occurred at the hearing. Ms. Mire emphasizes that the 1 aaudio recording provided to her was “spliced,” but this fact was never in dispute. Indeed, Brian Butcher, who provided Ms. Mire with a CD containing the-audio of the proceedings in question, agreed that he created the CD by “splicing” audio from an audio cassette and a digital recording that overlapped, one another. Mr, Butcher denied adding audio related to Judge . Keaty’s disclosure and explained that splicing the audio recording was necessary because the digital recorder provided by Mr. Wax’s company was malfunctioning and a backup audio cassette recorder transcribed the proceedings until the digital recorder became functional again. Mr. .Butcher even- explained why the audio from the cassette tapes might sound slightly different from the digital audio recording: “I would imagine that there was a — at the edit point you probably heard a little difference jn audio because it. was two- different microphones that were recording.” That Judge Keaty did not know the precise reason the audio had to -be spliced is of no moment as it is both likely and eminently understandable why she would not be intimately familiar with the technical aspects of the various court room recording equipment and the particulars as to when one or the other was malfunctioning. Ultimately, it was abundantly clear to the majority that Ms. Mire failed to produce even a scintilla of objective evidence that the audio record *706 ing provided to her did not accurately reflect the próceedings before Judge Keaty.
I have reviewed Judge Phyllis Keaty’s work for many years when she served as a family court judge on the Fifteenth Judicial District Court prior to her election to the Third Circuit Court of Appeal, and her work was consistently outstanding. She is an excellent jurist with a sterling reputation. It is clear from the- record evidence that- Judge Keaty was faced with a véry troubling attorney in this case whose conduct evidences a pattern of unprofessional behavior which led the Court to impose the underlying sanctions upon her (1) for her defiance and obstinacy in refusing for almost two years to disgorge a $6,839.50 fee she received from a (¡¡client in bankruptcy, for which the' bankruptcy judge assessed approximately $28,000 in penalties ágainst her, and (2) for the gravely offensive language she used in a-writ application to -this Court-accusing members of the Court of Appeal for the Third Circuit of “incompetence and/or corruption” and of possibly “want[ing] to cover up-the egregious actions of the trial court so it cannot-be used in-the current election.” Ms. Mire has a checkered history. Having-practiced since 2004, there is ho question in my mind that Ms. Mire knew exactly what she was doing when she sought to besmirch the integrity of Judge Thibodeaux, Judge Peters, Judge Painter, and Judge Keaty. Her conduct before the courts of this state in the Hunter matter and before the federal bankruptcy court in the Weinstein matter was out of cbntrol and unacceptable, and the sanction imposed was absolutely appropriate given the egregious nature of her conduct.

. 428 Sa2d 406, 409 (La. 1983) (“[I]t is not the genuineness of an attorney's belief in the truth of his allegations, but the reasonableness of that belief and the good''faith of the attorney in asserting it that determines whether or not one has ‘knowingly’ made false accusations agairist a judge within the meaning of DR 8-102(B).”).